UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY MORRIS,

    Petitioner,                                    Hon. Janet T. Neff

v.                                                        Case No. 1:09-CV-510

CINDI CURTIN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Morris' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Morris' petition be **denied**.

### BACKGROUND

As a result of events that occurred on October 2, 2006, Petitioner was charged with: (1) two counts of armed robbery; (2) first degree home invasion; (3) larceny in a building; (4) being a felon in possession of a firearm; (5) assault with a dangerous weapon; and (6) possessing a firearm during the commission of a felony. (Trial Transcript, April 9, 2007, 32-34). Several people testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Donald Hopkins**

As of October 8, 2006, Hopkins was employed as a Police Officer for the City of Romulus. (Trial Transcript, April 9, 2007, 162). On that date, Officer Hopkins made contact with Petitioner at a Howard Johnson's hotel. (Tr. 162-63). Officer Hopkins entered Petitioner's hotel room and subsequently discovered a 9-millimeter semi-automatic handgun therein. (Tr. 163).

**Jeanette Dennis**

As of October 2, 2006, Dennis resided at 4022 Harrison, Inskter, Michigan. (Trial Transcript, April 9, 2007, 165-66). At approximately 9:30 that evening, Dennis heard a knock at the side door to her house. (Tr. 166-67). Dennis looked through the peep hole and saw Petitioner. (Tr. 167-68). Dennis and Petitioner are related. (Tr. 168). Dennis had known Petitioner for "about eight years" and was "very familiar" with what he looked like. (Tr. 168).

When asked what he wanted, Petitioner stated that "he wanted to use the phone." (Tr. 168). Petitioner further stated that "someone had told him that [his grandmother] was sick and in the hospital and he wanted to call and see was she okay." (Tr. 169). Believing that her storm door was locked, Dennis opened the interior door. (Tr. 169). Dennis was going to tell Petitioner to "go use the pay phone," but before she could speak, Petitioner "just pushed his way on in" into the kitchen. (Tr. 169-70). Petitioner then put a gun to Dennis' head and threatened to kill her if she "said anything." (Tr. 169-70). Dennis identified the gun recovered from Petitioner's hotel room as the gun that Petitioner threatened her with on October 2, 2006. (Tr. 163, 170-71). Petitioner was accompanied by Demetrius Milan, who was also brandishing a firearm. (Trial Transcript, April 10, 2007, 12-15). Dennis did not give permission for Petitioner to enter her home. (Tr. 12).

At the time Petitioner and his accomplice entered Dennis' home, Dennis' son, Tyrone, was in the basement. (Tr. 14). After Petitioner and Milan entered the home, Dennis heard Tyrone "at the bottom of the basement steps." (Tr. 14). Milan immediately pointed his weapon at Tyrone and stated, "move, mother fucker, I'll kill you and her." (Tr. 14-15). Petitioner then told Dennis that if she moved or said anything he would kill Tyrone. (Tr. 16). Petitioner and Milan then proceeded down the stairs into the basement. (Tr. 16). Dennis subsequently heard Petitioner tell Tyrone, "I know you got more money than this; I know you cashed your check." (Tr. 16-17). Milan then told Tyrone, "give it up, I want it all." (Tr. 17). Tyrone responded, "that's all the money that I have" immediately after which Dennis heard somebody being struck. (Tr. 17).

Petitioner then returned to the kitchen, grabbed Dennis by the arm, and led her down the hall to her bedroom. (Tr. 18-19). Petitioner took $183 that was sitting on Dennis' dresser. (Tr. 19). Petitioner then stated to Dennis, "sorry about this" and exited the house. (Tr. 19-21). As he did so, he also took a video camera and Tyrone's cell phone. (Tr. 21). When Dennis later exited her bedroom, she saw Tyrone in the kitchen. (Tr. 21-22). Tyrone "had a gash in the top of his head" and "his head was full of blood." (Tr. 22). Tyrone was subsequently transported to the hospital by ambulance. (Tr. 23).

The following day, Dennis received a telephone call from Petitioner. (Tr. 23). Petitioner told Dennis that if she "press[ed] charges," he would "come back [and] kill everybody in the house." (Tr. 23-24). Petitioner called "several" more times leaving similar messages with Dennis' children. (Tr. 24).

**Tyrone Wilson**

As of October 2, 2006, Wilson resided with his mother, Jeanette Dennis, at 4022 Harrison, Inskter, Michigan. (Trial Transcript, April 10, 2007, 60-61). That evening, Wilson was in the basement when he heard "a commotion" upstairs. (Tr. 61-62). When Wilson approached the stairs, he was "pulled back downstairs" by Petitioner and another man. (Tr. 62). Petitioner and this other man struck Wilson in the head with their weapons, after which Petitioner took approximately two hundred dollars from Wilson. (Tr. 62-64). Petitioner then "ran all around the house" while his accomplice guarded Wilson. (Tr. 64-65).

**Jonathan Munson**

As of October 2, 2006, Munson was employed as a Police Officer for the Inkster Police Department. (Trial Transcript, April 10, 2007, 101). At approximately 9:30 that evening, Officer Munson was dispatched to 4022 Harrison to investigate a robbery of a mother and son. (Tr. 101-02). When Munson arrived at this location, he observed that the son "was bleeding from a head injury." (Tr. 102). The son was transported to a hospital for treatment. (Tr. 102).

Following the presentation of evidence, the jury found Petitioner guilty of first degree home invasion. (Trial Transcript, April 11, 2007, 7-8). Petitioner was found not guilty of the remaining charges. (Tr. 7-8). Petitioner was sentenced as an habitual felon to serve 20-30 years in prison. (Sentencing Transcript, May 11, 2007, 7, 19). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I.  Defense counsel rendered ineffective assistance under the state and federal constitutions, where he failed to request a jury instruction on the lesser included offense to home invasion, entering without

>      permission.
>
> II.   The trial court violated Mr. Morris' Sixth Amendment right to be confronted with the witness against him by admitting into evidence Tyrone Wilson's preliminary examination testimony where Mr. Wilson was not unavailable at trial.
>
> III.  Mr. Morris was denied his federal and state constitutional rights to an impartial jury drawn from a fair cross-section of the community where there were two African-American people in the array of forty-two people from which his jury was selected due to the systematic exclusion of African-American residents of Wayne County from jury service.
>
> IV.   Mr. Morris is entitled to resentencing where the sentencing guidelines range was enhanced by the scoring of offense variables one, two, three, and sixteen, on the basis of facts not proven to a jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments, and contrary to the principles underlying *Blakely v. Washington*
>
> V.    The Court should vacate the order for reimbursement of $600 in attorneys fees as Mr. Morrishad no assets at the time of sentencing and has demonstrated no ability to pay.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence, but remanded the matter "for a determination of [Petitioner's] current and future ability to repay his court-appointed attorney fees." *People v. Morris*, 2008 WL 4958801 (Mich. Ct. App., Nov. 20, 2008). Asserting claims I-III, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Morris,* No. 138052 Order (Mich., Apr. 28, 2009). On June 4, 2009, Petitioner initiated the present action in which he asserts claims I-III above.

5

**STANDARD OF REVIEW**

Morris' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the

merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de

novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.        Ineffective Assistance of Counsel**

As noted above, Petitioner was charged with several crimes including first degree home invasion. Petitioner asserts that he was denied the right to the effective assistance of counsel where his trial attorney failed to request that the jury be instructed on the lesser included offense of breaking and entering without permission.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's

9

allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Under Michigan law then in effect, a person was guilty of first degree home invasion where: (1) the defendant broke and entered a dwelling or entered a dwelling without permission; (2)

10

that when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) the defendant was armed with a dangerous weapon or another person was lawfully present in the dwelling. *See People v. Stewart*, 2006 WL 2033987 at *1 (Mich. Ct. App., July 20, 2006). On the other hand, the elements of breaking and entering without permission are: (1) breaking and entering or entering without breaking the building, and (2) without the owner's permission. *See People v. King*, 2005 WL 3335065 at *2 (Mich. Ct. App., Dec. 8, 2005). The Michigan Supreme Court has concluded that breaking and entering without permission "is a necessarily included lesser offense of first-degree home invasion." *People v. Silver*, 646 N.W.2d 150, 151 (Mich. 2002).

Under Michigan law, a trial judge "upon request, should instruct the jury regarding any necessarily included lesser offense. . .if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense, and a rational view of the evidence would support it." *Silver*, 646 N.W.2d at 151. Petitioner has failed to overcome the presumption that his attorney's decision on this matter constituted reasonable trial strategy. Counsel may very well have concluded that the prosecution had failed to carry its burden as to the charge of first degree home invasion and, therefore, did not want to unnecessarily expose Petitioner to conviction of a lesser offense. Considering that Petitioner was acquitted of the other charges, such would not have been an unreasonable conclusion. Moreover, a rational view of the evidence does not support providing the requested instruction. Despite the jury's resolution of the various other offenses, the undisputed evidence presented at trial refutes any claim that Petitioner simply entered Jeanette Dennis' home without permission and instead reveals that Petitioner entered the residence with the intent to commit a felony, larceny, or assault.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim, concluding that "a rational view of the evidence would not have supported a finding of entry without permission as opposed to first-degree home invasion." *Morris*, 2008 WL 4958801 at *2. As the court observed:

> The homeowner testified that when defendant was standing outside her house he told her that he just wanted to use the telephone, and as soon as she opened the door slightly, defendant forcefully pushed his way into the house, knocked her down, put a gun to her head, and then proceeded to steal money from her and physically assault and steal money from her son. Thus, a rational view of the evidence would not support a finding that defendant entered the house without permission with the intent to use the telephone. A rational view of the evidence also fails to support a finding that defendant made plans with the homeowner's son to come to the house that evening. The son repeatedly testified that he did not know that defendant was going to come back to the house that evening and that he did not recall speaking to defendant on the telephone earlier in the day to make plans for defendant to return to the house. This testimony was not contradicted by any evidence on the record.
>
> Because an instruction on entering without permission would not have been warranted even if requested, defendant has failed to overcome the presumption that his attorney served him competently.

*Id.*

The decision by the Michigan Court of Appeals rejecting this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.       Confrontation Clause**

As noted above, testimony from Tyrone Wilson was presented at Petitioner's trial. Wilson did not testify at Petitioner's trial, however. Instead, his testimony from the preliminary examination was read for the jury. Petitioner asserts that allowing Wilson's previous testimony to be introduced violated his Sixth Amendment right to confront the witnesses against him.

The Confrontation Clause of the Sixth Amendment, applied to the states through the Fourteenth Amendment, *see Pointer v. Texas*, 380 U.S. 400, 403-05 (1965), guarantees to every criminal defendant the right "to be confronted with the witnesses against him." *Cruz v. New York*, 481 U.S. 186, 189 (1987). This right entitles the accused to see the witnesses against him face-to-face, and to hear their testimony. *See Dowdell v. United States*, 221 U.S. 325, 329-30 (1911).[1]

The Confrontation Clause insures that each witness "will give his statements under oath - thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Lee v. Illinois*, 476 U.S. 530, 540 (1986). It also permits the jury to observe the witnesses, enabling them to judge by their demeanor on the stand whether they are worthy of belief. *See Mattox v. United States*, 156 U.S. 237, 242-43 (1895). The primary right secured by the Confrontation Clause, however, is the right to cross-examine witnesses. *See Ohio v. Roberts*, 448 U.S. 56, 63 (1980). The importance of the right to cross-examine adverse witnesses cannot be overstated. As is well recognized, cross-examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

The importance of the Confrontation Clause notwithstanding, it cannot be interpreted

---

[1] The Supreme Court has recognized a very limited exception to the requirement of physical, face-to-face, confrontation. *See Maryland v. Craig*, 497 U.S. 836 (1990) (remote testimony by child assault victim, using closed circuit video monitor, is acceptable if the child would suffer trauma as a result of face-to-face confrontation).

literally, so as to allow criminal defendants to physically confront and cross-examine every witness against him. To do so would eliminate every exception to the hearsay rule, a result the Supreme Court has repeatedly rejected. *See Roberts*, 448 U.S. at 63. This is not to say, however, that the Confrontation Clause imposes no limitation upon the admissibility of hearsay evidence.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Court held that the admission of testimonial statements by an out-of-court declarant violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant previously had the opportunity to cross-examine the declarant. *Id.* at 42-69. As the Court observed, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence." *Id.* at 61. However, as the Supreme Court subsequently observed:

> A critical portion of this holding. . .is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Davis v. Washington*, 547 U.S. 813, 821 (2006).

Tyrone Wilson's preliminary examination testimony certainly constitutes "testimonial statements." *See Crawford*, 541 U.S. at 68 ("[w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial"). As previously noted, "[w]here testimonial evidence is at issue. . .the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.*

A witness is not unavailable for Confrontation Clause purposes "unless the prosecutorial authorities have made a *good-faith effort* to obtain his [or her] presence at trial." *Winn*

*v. Renico*, 175 Fed. Appx. 728, 733 (6th Cir., May 12, 2006) (quoting *Roberts*, 448 U.S. at 74).[2] The effort which the prosecution must expend to produce a witness "is a question of reasonableness." *Winn*, 175 Fed. Appx. at 733 (citing *Green*, 399 U.S. at 189 n.22). The "ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Winn*, 175 Fed. Appx. at 733 (citing *Roberts*, 448 U.S. 74).

At the outset of trial, the prosecutor explained that he sent a subpoena to Tyrone Wilson two weeks prior to the start of trial. (Trial Transcript, April 9, 2007, 4). After doing so, however, the prosecutor discovered that Wilson had since moved from his previous residence. (Tr. 4). The prosecutor indicated that Wilson "is a truck driver who travels the United States" and is "usually on the road three weeks on and one week off." (Tr. 4). While Wilson remained in "semi-regular" contact with his mother, Wilson "doesn't have a cell phone when he's on the road." (Tr. 4). The prosecutor indicated that he "tried to call the trucking company twice to find out [Wilson's] location but was unable to do so." (Tr. 4). The prosecutor also called Wilson's mother "on three different occasions to see if she had spoken to him to let him know we were looking for him and wanted him here at trial." (Tr. 4). The prosecutor indicated that Wilson had not been in contact with his mother. (Tr. 4).

The trial judge found that the prosecutor "exercised due diligence in attempting to locate Mr. Wilson for the purposes of this trial." (Tr. 6). The judge also found that "there was no restriction on defense counsel's cross-examination of Mr. Wilson at the time the preliminary examination was conducted." (Tr. 6-7). Accordingly, the judge concluded that "the preliminary

---

[2] While the Supreme Court's decision in *Crawford* abrogated that portion of the *Roberts* decision that permitted out-of-court testimonial statements to be admitted upon a showing of reliability, *Crawford* did not alter the "unavailability" analysis under the Confrontation Clause.

examination transcript which contains the testimony of Tyrone Wilson will be used in lieu of live testimony at the time of trial." (Tr. 7). The Michigan Court of Appeals rejected Petitioner's Confrontation Clause claim, concluding that:

> For the trial court to properly deem a witness unavailable, the prosecutor has to establish that he made a diligent, good-faith effort to produce the witness for trial. The proper test is "one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."
>
> Defendant argues that the prosecution did not exercise due diligence in attempting to produce the homeowner's son at trial because it waited until two weeks before trial to attempt to serve the son with a subpoena and did not take any affirmative steps to secure his appearance at trial.
>
> The trial court did not abuse its discretion in finding that the prosecution acted diligently in attempting to produce the son for trial and in allowing his preliminary testimony into evidence. The son had been a willing witness before, and thus the prosecution did not have any reason to anticipate that there would be any difficulty in securing his appearance at trial or in serving him. Moreover, the prosecution's efforts in contacting the son's family and his employer in order to locate him produced no specific leads regarding his whereabouts. Finally, the trial court determined that the son's preliminary examination testimony was adequately developed and there was no restriction on defense counsel's cross-examination of him at the preliminary examination.
>
> Thus, defendant has failed to demonstrate that the trial court made a decision outside the range of reasonable and principled outcomes, which is needed to establish an abuse of discretion. The trial court acted within its discretion in finding the prosecution's efforts diligent and allowing the son's preliminary examination testimony into evidence.

*Morris*, 2008 WL 4958801 at *2-3 (internal citations and footnote omitted).

The decision by the Michigan Court of Appeals rejecting this claim is neither

contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**III.        Fair Cross-Section**

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The United States Supreme Court has long held that this right includes the right to be tried by a jury drawn from a fair cross-section of the community. *See Berghuis v. Smith*, 130 S.Ct. 1382, 1387 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). Petitioner alleges that his right to be tried by a jury drawn from a fair cross-section of the community was violated because the panel from which his jury was selected contained only two African-Americans.

To establish a prima facie violation of the fair cross-section requirement, Petitioner must demonstrate: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *See Berghuis*, 130 S.Ct. at 1392 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

It must be noted, however, that Petitioner must show not only that the distinctive group in question was insufficiently represented on the venire from which his jury was selected, but that such was the case in other venires as well. *See Duren*, 439 U.S. at 366 ("it was necessary for

petitioner to show that the underrepresentation of women, *generally and on his venire*, was due to their systematic exclusion in the jury-selection process") (emphasis added); *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) ("defendants must show more than that their particular panel was unrepresentative"); *McGinnis v. Johnson*, 181 F.3d 686, 690 (5th Cir. 1999) ("one incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion"); *Gardner v. Kapture*, 261 F.Supp.2d 793, 802 (E.D. Mich. 2003) ("a one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element").

While African-Americans are a "distinctive group" in Wayne County, Petitioner cannot satisfy the second or third prong of the analysis. While Petitioner alleges that the venire from which his jury was selected was populated by a insufficient number of African-Americans, he has failed to allege (let alone establish) that such was the case on any other venire. Moreover, Petitioner has failed to establish that the underrepresentation of African-Americans on the venire from which his jury was selected was the result of any kind of systematic exclusion.

The Michigan Court of Appeals rejected Petitioner's claim, concluding that Petitioner failed to satisfy the second and third prongs of the analysis. *Morris*, 2008 WL 4958801 at *3-4. This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Morris' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 29, 2011         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge